NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 7, 2007[*]
Decided November 9, 2007

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-1983

| | |
|---|---|
| GEORGE DUMAS and ROZOLA DUMAS, <br> *Plaintiffs-Appellants,* <br><br> *v.* <br><br> PENSION BENEFIT GUARANTEE CORPORATION <br> *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Indiana <br><br> No. 2:05-cv-00100 <br><br> Rudy Lozano, <br> *Judge.* |

### O R D E R

George and Rozola Dumas sued the Pension Benefit Guarantee Corporation ("PBGC"), claiming that it understated the amount of benefits due to them under their former employer's pension plan. PBGC now administers that plan under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

1302.  They appeal from the district court's grant of summary judgment in favor of PBGC.  We affirm.

The facts in this case are undisputed.  George Dumas worked for the Youngstown Sheet and Tube Company until his retirement in 1978 at age 56, and participated in its pension plan, the LTV Steel Hourly Pension Plan.  George and Rozola Dumas, his wife, are beneficiaries under the plan, which began paying them monthly benefits after his retirement.  George is also eligible for Social Security disability benefits.

In 2002 the LTV Corporation went bankrupt and PBGC, which insured the Dumases benefits, became the statutory trustee of the plan, effective March 31, 2002.  *See Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 637-638 (1990) (describing the PBGC role under ERISA).  In April 2003, the PBGC confirmed that it would continue to pay George the same benefit that he received under the pension plan before its demise, which at that time was $471.70 per month.  Around the same time as they received this confirmation, the Dumases also received an information brochure from the PBGC.  Under a section entitled "PBGC's Maximum Guaranteed Benefit, the brochure described the maximum benefit payable to disabled retirees:

> For plans terminating in 2002, the maximum monthly benefit paid by the PBGC is $3,579.55 payable as a Straight Line Annuity at age of 65.  We adjust the maximum benefit paid for options other than Straight Life Annuity.  Except for disabled members receiving Social Security disability benefits, we also adjust the maximum benefit for commencement ages other than 65.

George appealed to the PBGC, arguing that this statement entitled him to the maximum monthly benefit for the plan, $3,579.55, because he is a disabled retiree.  The PBGC denied George's appeal, explaining that he was receiving the amount he accrued under the plan, and that the $3,579.55 amount in the brochure was a cap, not an individual entitlement.  The Dumases sued in federal court, continuing to insist that, based on this brochure, they were entitled to an extra $3,000 per month in pension benefits.  The district court ruled for the PBCG on summary judgment.

We will set aside a final agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).  *See also Dycus v. Pension Ben. Guar. Corp.*, 133 F.3d 1367 (10th Cir. 1998).  The PBGC's decision to pay the Dumas's the same benefit that they had been receiving under their now-terminated pension plan, rather than the maximum amount payable to pensioners in general, comports with this standard.  The

Dumases do not dispute that $471.70 is all that they are entitled to under George's pension plan. Further the PBGC does not create new pension rights. It merely guarantees that the benefits in existing pension plans continue after the termination of underfunded pension plans. *See LTV Corporation,* 496 U.S. at 637. Furthermore, the statement that the Dumases seize on to seek a windfall of over $3,000 per month does not purport to expand their pension rights. It simply sets out the statutory maximum for pensioners, and ensures that *if* one is entitled to the maximum, the PBGC will not reduce it for those who retired early and receive Social Security disability benefits. The Dumases' are not entitled to the maximum, so the cap does not affect them even though George is a disabled retiree.

The Dumases also argue on appeal that the district court abused its discretion in not granting their motion for default judgment. The PBGC is a wholly government-owned corporation, *United States v. Hook*, 195 F.3d 299, 304 (7th Cir. 1999). Under Federal Rule of Civil Procedure 55(e), as an agency of the United States the PBGC is not subject to a default judgment. *See also Mommaerts v. Hartford Life and Accident Ins. Co.*, 472, F.3d 967, 969 (7th Cir. 2007) (explaining that absent a showing of prejudice from the default, an appellate court would create "a pointless windfall" if it preferred a default judgment to an already-decided merits determination). Accordingly there was no abuse of discretion in denying their motion for a default judgment.

AFFIRMED